IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR OKEECHOBEE COUNTY, FLORIDA

GLADYS CASTILLO, individually and on behalf
of her minor children, KEVIN MORALES and
VANNIA MORALES,

          Plaintiffs,                     CASE NO: 472018CA00063A

vs.

JAMES BRADFIELD, M.D.; RAULERSON GYN, LLC;
OKEECHOBEE HOSPITAL, INC. d/b/a RAULERSON
HOSPITAL; ALEXANDER VENNOS, M.D.; FLORIDA
UNITED RADIOLOGY, L.C.; DAVID MATEO, M.D.;
PABLO GONZALEZ, M.D.; and CHARLYN COLEMAN,
CNM, ARNP, and FLORIDA COMMUNITY HEALTH
CENTERS, INC. d/b/a ST. LUCIE WOMEN AND
CHILDREN CENTER,

          Defendants.

_____/

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN

MORALES and VANNIA MORALES, by and through undersigned counsel, sues Defendants,

JAMES BRADFIELD, M.D.; RAULERSON GYN, LLC; OKEECHOBEE HOSPITAL, INC. d/b/a

RAULERSON HOSPITAL; ALEXANDER VENNOS, M.D.; FLORIDA UNITED RADIOLOGY, L.C.;

DAVID MATEO, M.D.; PABLO GONZALEZ, M.D.; CHARLYN COLEMAN, CNM, ARNP; and

FLORIDA COMMUNITY HEALTH CENTERS, INC. d/b/a ST. LUCIE WOMEN AND CHILDREN

CENTER and states:

### JURISDICTIONAL STATEMENT AND IDENTIFICATION OF PARTIES

1.     This is an action for damages that exceed $15,000.00.

2.     Venue is proper in Okeechobee County, Florida, as this is where the events giving

rise to this action occurred and where the Defendants reside or conduct their professional

practices of medicine.

3.      Plaintiff, GLADYS CASTILLO, was a patient and received medical care and treatment from the named Defendants at the times set forth below.

4.      Plaintiff, GLADYS CASTILLO, is a United States citizen and a resident of Okeechobee County, Florida, is the natural mother of her two minor children, KEVIN MORALES and VANNIA MORALES, and brings a claim on their behalf as dependents, as well as on her own behalf as set forth herein.

5.      At all times material hereto, Defendant, JAMES BRADFIELD, M.D. (hereinafter "DR. BRADFIELD"), provided medical care and treatment to GLADYS CASTILLO, as more particularly described below.  Defendant, DR. BRADFIELD, was the agent, apparent agent, servant or employee of Defendant, RAULERSON GYN, and was acting within the course and scope of his employment at the time he rendered treatment to GLADYS CASTILLO.

6.      At all times material hereto, Defendant, RAULERSON GYN, LLC (hereinafter "RAULERSON GYN"), was and is a Florida limited liability company, authorized to do business and in fact doing business in Okeechobee County, Florida. Defendant, RAULERSON GYN, by and through its employees and agents, provided medical care and treatment to GLADYS CASTILLO, as more particularly described below.

7.      At all times material hereto, Defendant, OKEECHOBEE HOSPITAL, INC. d/b/a RAULERSON HOSPITAL (hereinafter referred to as "RAULERSON HOSPITAL"), owned, operated and maintained a full service, acute care hospital that was and is a Florida corporation, authorized to do business and, in fact, doing business in Okeechobee County, Florida. GLADYS CASTILLO received medical care and treatment at this facility.

8.      At all times material hereto, Defendant, ALEXANDER VENNOS (hereinafter "DR. VENNOS"), provided medical care and treatment to GLADYS CASTILLO, as more particularly described below. Defendant, DR. VENNOS, was the agent, apparent agent, servant or employee

of Defendants, RAULERSON HOSPITAL and FLORIDA UNITED RADIOLOGY, and was acting within the course and scope of his employment at the time he rendered treatment to GLADYS CASTILLO.

9.      At all times material hereto, Defendant, FLORIDA UNITED RADIOLOGY, L.C. (hereinafter "FLORIDA UNITED"), was and is a Florida limited liability company, authorized to do business and in fact doing business in Okeechobee County, Florida. Defendant, FLORIDA UNITED, by and through its employees and agents, provided medical care and treatment to GLADYS CASTILLO, as more particularly described below. Defendant, FLORIDA UNITED, was the agent, apparent agent, servant or employee of Defendant, RAULERSON HOSPITAL, and was acting within the course and scope of its employment at the time FLORIDA UNITED rendered treatment to GLADYS CASTILLO.

10.      At all times material hereto, Defendant, DAVID MATEO (hereinafter "DR. MATEO"), provided medical care and treatment to GLADYS CASTILLO, as more particularly described below.  Defendant, DR. MATEO, was the agent, apparent agent, servant or employee of Defendant, FLORIDA COMMUNITY HEALTH CENTERS, INC., and was acting within the course and scope of his employment at the time he rendered treatment to GLADYS CASTILLO.

11.      At all times material hereto, Defendant, PABLO GONZALEZ (hereinafter "DR. GONZALEZ"), provided medical care and treatment to GLADYS CASTILLO, as more particularly described below. Defendant, DR. GONZALEZ, was the agent, apparent agent, servant or employee of Defendant, FLORIDA COMMUNITY HEALTH CENTERS, INC., and was acting within the course and scope of his employment at the time he rendered treatment to GLADYS CASTILLO.

12.      At all times material hereto, Defendant, CHARLYN COLEMAN, CNM, ARNP (hereinafter "COLEMAN"), provided medical care and treatment to GLADYS CASTILLO, as more

particularly described below. Defendant, COLEMAN, was the agent, apparent agent, servant or employee of Defendant, FLORIDA COMMUNITY HEALTH CENTERS, INC., and was acting within the course and scope of her employment at the time she rendered treatment to GLADYS CASTILLO.

13.     At all times material hereto, FLORIDA COMMUNITY HEALTH CENTERS, INC. d/b/a ST. LUCIE WOMEN AND CHILDREN CENTER (hereinafter "FCHC"), was and is a Florida Not for Profit Corporation, authorized to do business and in fact doing business in St. Lucie County, Florida. FCHC, by and through its employees and agents, provided medical care and treatment to GLADYS CASTILLO, as more particularly described below.  FCHC is a private, non-profit, tax exempt 501(c), consumer directed corporation which is designated as a Federally Qualified Health Center (FQHC) and a Federal Tort Claims Act (FTCA) deemed facility.

**COMPLIANCE WITH CONDITIONS PRECEDENT
AND FLORIDA STATUES § 766.106(2)**

14.     Notice of Intention to Initiate Litigation was given against all Defendants or to those they were in a legal relationship with in accordance with the requirements of Fla. Stat. § 766.106(2).  This action has been properly brought within two years of the date the alleged negligence occurred or within the two years of the date the alleged negligence could have been discovered with the exercise of due diligence, or within the statute of limitations as extended by operation of law, and not later than four years from when the negligence occurred. Any amendments relate back to the filing of the original Complaint.

15.     A copy of the Amended Complaint will be sent to the Agency for Healthcare Administration.

16.     Any and all conditions precedent to the filing of this lawsuit have been complied with.

## COMPLIANCE WITH CONDITIONS PRECEDENT
## AND 28 U.S.C. §§1346(b); 2671-80

17.     The Plaintiff has complied with the requirements of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680 and 28 U.S.C. § 2401(b). An administrative tort claim was filed with the U.S. Department of Health and Human Services, within two years of the alleged incidence of negligence, and this Amended Complaint is filed within six months of the denial of that administrative claim.

18.     Any and all conditions precedent to the filing of this lawsuit have been complied with.

## CERTIFICATE OF COUNSEL

19.     Through counsel's signature below, it is hereby certified, pursuant to Fla. Stat. § 766.203, that counsel for the Plaintiff, prior to filing this action, has made a reasonable investigation, as permitted by the circumstances, to determine that reasonable grounds exist for a good-faith belief that Defendants were negligent in the care and treatment of GLADYS CASTILLO. Further, such reasonable investigation has given rise to a good-faith belief that grounds exist for an action against the named Defendants.

## FACTS GIVING RISE TO CAUSE OF ACTION

20.     On August 18, 2015, Gladys Castillo presented to the office of DR. BRADFIELD at RAULERSON GYN and reported that she was able to palpate a lump in her left breast.

21.     Upon physical examination, DR. BRADFIELD found a dense fibrous mass above the left nipple approximately 3 x 2 cm, but irregular in shape.  DR. BRADFIELD ordered a mammogram and breast ultrasound to be performed.

22.     On August 19, 2015, Ms. Castillo underwent a bilateral screening mammogram at RAULERSON HOSPITAL that was interpreted by DR. VENNOS. The history given was "bilateral breast mass lesions, tenderness." DR. VENNOS's impression of the bilateral screening

mammogram was as follows:

> "Mammographically dense breasts as discussed. Questionable area of architectural distortion in the upper outer quadrant of the left breast. Additional images of the left breast and left breast ultrasonogram recommended for further evaluation. Assessment Category 0, additional imaging required."

The report was copied to Dr. Bradfield.

23.     On August 21, 2015, a unilateral left diagnostic mammogram was performed at RAULERSON HOSPITAL and interpreted by DR. VENNOS. The reason for the exam was listed as "abnormal mammogram." DR. VENNOS's interpretation was "No radiographic features indicative of malignancy. Routine annual follow up recommended. Assessment Category II, benign. Follow up in one year."

24.     Ms. Castillo returned to DR. BRADFIELD's office on September 17, 2015, a week after learning that she was pregnant.

25.     DR. BRADFIELD noted "some breast tenderness and had a breast work-up recently which was fortunately negative." He failed to note that the breast ultrasound he had ordered was never performed.

26.     DR. BRADFIELD did not provide care for obstetrical patients and therefore Ms. Castillo began treatment at FCHC for her prenatal care and related healthcare needs.

27.     On October 6, 2015, Ms. Castillo was seen at FCHC by DR. MATEO for complaints of nausea and vomiting during pregnancy.

28.     An ultrasound confirmed an intrauterine pregnancy at eight weeks and three days, and she was started on Diclegis for morning sickness, as well as folic acid.

29.     Ms. Castillo returned to FCHC on October 28, 2015 for her initial obstetrical prenatal examination where she was seen and evaluated by COLEMAN.

30.     COLEMAN documented that she performed a breast examination and it was

normal. However, Ms. Castillo still had a painful lump that was palpable, as noted by DR. BRADFIELD previously on August 18, 2015.

31. The existence of this palpable lump was communicated by Ms. Castillo to COLEMAN and the other healthcare providers at FCHC but was not documented by COLEMAN or the other healthcare providers.

32. Ms. Castillo continued to receive prenatal care from DR. MATEO, DR. GONZALEZ, and various midwives, including COLEMAN, at FCHC throughout her pregnancy during which period of time she continuously raised her concerns about the persistent and growing palpable lump in her breast.

33. On April 25, 2016, Ms. Castillo was seen at FCHC by DR. MATEO who, at that time, noted that Ms. Castillo had breast pain. His plan was to order a breast ultrasound.

34. No other provider at FCHC, including DR. GONZALEZ, COLEMAN, or any other midwife, agent, or employee documented Ms. Castillo's palpable lump or breast pain, despite their existence and her continued complaints and requests for evaluation.

35. On May 3, 2016, Ms. Castillo presented to the Diagnostic Radiology Center of the Treasure Coast for the breast ultrasound ordered by DR. MATEO.

36. On the breast worksheet, it was documented that Ms. Castillo had a history of a palpable lump on the axilla. Approximately three axillary lymph nodes measuring 0.6 cm, 1.1 cm, and 1.2 cm were noted. The left breast was positive for a palpable mass at the 12:00 position, measuring 3.3 x 2.3 x 2.0 cm. It was noted that the patient had a mammogram in August 2015 and Ms. Castillo stated that the doctor said it was a fibroadenoma. Two palpable lumps in the axilla measuring 2.5 x 1.8 x 2.3 cm and 1.5 x 1.7 x 2.3 cm were noted, which appeared to be lymph nodes. There were lymph nodes in the axilla measuring 0.7 cm and 0.9 cm.

37.     The breast ultrasound was performed, and the impression was as follows:

> "Palpable mass at the 12:00 o'clock position appears to have been evaluated on a prior outside mammogram in August 2015.  The prior mammogram study is not available for comparison and no prior report is available for correlation with the current study at the time of this dictation.  On the current ultrasound there is a complex irregular 12:00 o'clock position mass.  Although this could represent a benign mass, a malignancy cannot be excluded on this study and the mass does not appear to represent a benign fibroadenoma by ultrasound.  A surgical consultation is recommended.  An MRI evaluation may be considered.BI-RADS clinical assessment category IV: Suspicious finding left breast. Surgical consultation recommended. 2.5 cm and 2.3 cm left axillary nodes which correspond to palpable lumps."

38.     Ms. Castillo delivered her baby on May 10, 2016 and began treatment with an oncologist, Rene Loyola, M.D., at that time.

39.     Following the delivery of the baby and her discharge from the hospital, Ms. Castillo continued follow-up care with Dr. Loyola on May 17, 2016.

40.     Dr. Loyola noted that in August 2015, Ms. Castillo had found a mass in her left breast and a mammogram was ordered and was interpreted as within normal limits and she was told to follow up in one year.  He further noted that after Ms. Castillo had become pregnant, she felt that the mass in the left breast had gotten larger and she felt some masses under her left axilla.  An ultrasound guided biopsy of the axilla revealed metastatic adenocarcinoma compatible with breast primary carcinoma.

41.     Ms. Castillo had family in Mexico and traveled there with her children so that she would have additional help from her family as she pursued medical treatment.

42.     On May 24, 2016, Ms. Castillo underwent a left mastectomy.  The pathology revealed HER2 positive breast carcinoma.

43.     On June 22, 2016, Ms. Castillo underwent a bone scan in Mexico which was positive for metastatic osseous disease and therefore her cancer was determined to be stage IV

with metastasis.

44.     Ms. Castillo began chemotherapy in Mexico and later returned to the United States and began treatment with Marinely Cruz-Amy, M.D., with whom she continued chemotherapy and treatment for stage IV metastatic breast carcinoma.

45.     According to a PET scan performed on or about December 19, 2017, Ms. Castillo's metastatic breast carcinoma had spread to her sternum.

46.     Due to the delay in diagnosing Ms. Castillo's cancer, Ms. Castillo's treatment was delayed resulting in aggravation of her pre-existing disease, a diminished life expectancy, and the damages further stated herein.

47.     Ms. Castillo's significant and permanent injuries, including but not limited to the aggravation of her pre-existing disease, were caused by the negligence of Defendants, as further stated herein.

## COUNT I
## CLAIM AGAINST DEFENDANT, JAMES E. BRADFIELD, M.D.
## NEGLIGENCE

The Plaintiff adopts and realleges paragraphs 1 through 47.

48.     On or about August 18, 2015, and continuing through October 1, 2015, Defendant DR. BRADFIELD provided medical care and treatment Ms. Castillo, as her treating physician.

49.     At all relevant times, Defendant, DR. BRADFIELD, was the agent, apparent agent, servant or employee of Defendant, RAULERSON GYN, and was acting within the course and scope of his employment at the time he rendered treatment to GLADYS CASTILLO.

50.     Specifically, Ms. Castillo sought examination and treatment by DR. BRADFIELD on August 18, 2015 and thereafter due to her discovery of a palpable lump in her left breast.

51.     Defendant, DR. BRADFIELD, was a physician who held himself out to the public

in general and to GLADYS CASTILLO in particular as a physician capable of and who undertook the corresponding duty to GLADYS CASTILLO of providing, supervising, and/or directing medical care and services to her in accordance with that level of care and skill which is recognized as acceptable and appropriate by reasonably prudent similar health care providers in the same or similar circumstances.

52.    Notwithstanding the duty undertaken, Defendant, DR. BRADFIELD, breached that duty in one or more of the following ways:

a.    Failure to ensure a breast ultrasound was performed after his palpating the lump in Ms. Castillo's left breast in August 2015 and thereafter; and

b.    Failure to refer Ms. Castillo to a surgeon and/or interventional radiologist for the performance of a biopsy of the left breast lump, initially palpated by him on August 18, 2015.

53.    As a direct and proximate result of the negligence of Defendant, DR. BRADFIELD, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer, decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

## COUNT II
## CLAIM AGAINST DEFENDANT, RAULERSON GYN, LLC
## VICARIOUS LIABILITY FOR THE NEGLIGENCE OF JAMES E. BRADFIELD, M.D.

The Plaintiff adopts and realleges paragraphs 1 through 47, and paragraph 52.

54.    At all relevant times, Defendant, DR. BRADFIELD, was the agent, apparent agent, servant or employee of Defendant, RAULERSON GYN, which is therefore vicariously liable for the negligence of Defendant, DR. BRADFIELD.

55.     As a direct and proximate result of the negligence of Defendant, DR. BRADFIELD, for which RAULERSON GYN, LLC is vicariously liable, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer, decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

### COUNT III
### CLAIM AGAINST DEFENDANT, ALEXANDER VENNOS, M.D.
### NEGLIGENCE

The Plaintiff adopts and realleges paragraphs 1 through 47.

56.     On or about August 19th, 2015, and continuing through August 21st, 2015, Defendant DR. VENNOS provided medical diagnostic radiology services to Ms. Castillo, as the diagnostic radiologist responsible for interpreting bilateral and left unilateral mammograms performed on the above dates.

57.     At all relevant times, Defendant, DR. VENNOS, was the agent, apparent agent, servant or employee of Defendant, FLORIDA UNITED, and was acting within the course and scope of his employment at the time he rendered treatment to GLADYS CASTILLO.

58.     In addition, because FLORIDA UNITED, was the agent, apparent agent, servant or employee of Defendant, RAULERSON HOSPITAL, Defendant, DR. VENNOS, was the agent, apparent agent, servant and employee of Defendant, RAULERSON HOSPITAL, and was acting within the course and scope of his employment with RAULERSON HOSPITAL at the time he rendered medical services to GLADYS CASTILLO.

59.     Defendant, VENNOS, was a physician who held himself out to the public in general and to GLADYS CASTILLO in particular as a physician capable of and who undertook the corresponding duty to GLADYS CASTILLO, of providing, radiological diagnostic services in accordance with that level of care and skill which is recognized as acceptable and appropriate by reasonably prudent similar health care providers in the same or similar circumstances.

60.     Notwithstanding the duty undertaken, Defendant, VENNOS, breached that duty in one or more of the following ways:

   a.     Failing to identify a positive lymph node on the mammogram performed August 19, 2015 at RAULERSON HOSPITAL; and

   b.     Failing to interpret malignancy on a unilateral left diagnostic mammogram performed August 21, 2015 at RAULERSON HOSPITAL.

   c.     Failing to perform a breast ultrasound in August 2015 at RAULERSON HOSPITAL.

61.     As a direct and proximate result of the negligence of Defendant, VENNOS, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent progression of her condition resulting in permanent impairment and a significantly diminished life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

## COUNT IV
## CLAIM AGAINST DEFENDANT, FLORIDA UNITED RADIOLOGY, LLC.
## VICARIOUS LIABILITY FOR THE NEGLIGENCE OF ALEXANDER VENNOS, M.D.

The Plaintiff adopts and realleges paragraphs 1 through 47, and paragraph 60.

62.     At all relevant times, Defendant, VENNOS, was the agent, apparent agent, servant or employee of Defendant, FLORIDA UNITED, which is therefore vicariously liable for the negligence of Defendant, VENNOS.

63.     As a direct and proximate result of the negligence of Defendant, VENNOS, for which FLORIDA UNITED is vicariously liable, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent progression of her condition resulting in permanent impairment and a significantly diminished life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

### COUNT V
### CLAIM AGAINST DEFENDANT, OKEECHOBEE HOSPITAL, INC
### d/b/a RAULERSON HOSPITAL
### VICARIOUS LIABILITY BASED ON ACTUAL AGENCY FOR THE NEGLIGENCE OF
### ALEXANDER VENNOS, M.D.

The Plaintiff adopts and realleges paragraphs 1 through 47, and paragraph 60.

64.     At all relevant times, Defendant, DR. VENNOS, was the agent, apparent agent, servant and employee of Defendant, RAULERSON HOSPITAL, and was acting within the course and scope of his employment at the time he rendered medical services to GLADYS CASTILLO.

65.     This health care provider was provided by Defendant, RAULERSON HOSPITAL, to act on its behalf of with respect to the care and treatment of patients such as GLADYS CASTILLO, that required medical care and services.  His actions with respect to the provision of medical care at Defendant, RAULERSON HOSPITAL, were controlled by Defendant, RAULERSON HOSPITAL, or alternatively, were subject to Defendant, RAULERSON HOSPITAL's, right of control.

66.     Defendant, RAULERSON HOSPITAL, is responsible for the negligence of Defendant, DR. VENNOS, because such negligence occurred while he was performing services which he  was expected to perform by RAULERSON HOSPITAL, or while he was acting at least

in part because of his desire to provide medical care and services at Defendant, RAULERSON HOSPITAL, and was doing something that was reasonably incidental to his duties as the health care provider providing medical care and services at the time GLADYS CASTILLO presented and was subsequently admitted.

67.     Alternatively, he was performing medical care and services which were undertaken by Defendant, RAULERSON HOSPITAL, and provided through Defendant, DR. VENNOS, and which were reasonably foreseeable and reasonably to be expected of a health care provider in the same or similar position.

68.     Moreover, Defendant, DR. VENNOS, was performing an essential function for Defendant, RAULERSON HOSPITAL, that of providing medical care and services at RAULERSON HOSPITAL, which undertook to provide, as a full service acute care hospital, such medical care and services to patients such as GLADYS CASTILLO, who came there for treatment.

69.     Defendant, RAULERSON HOSPITAL, exercised control over VENNOS's working hours, payment, quality of medical care, and scheduling of the provision of such services by Defendant, DR. VENNOS, and Defendant, DR. VENNOS, accepted and acknowledged the agency relationship between them.

70.      In addition, pursuant to Fla. Stat. § 395.1055, licensed hospitals such as RAULERSON HOSPITAL are established, organized and operated with standards and rules, including the provision of sufficient numbers and types of medical care and services for its patient population.

71.     As a direct and proximate result of the negligence of Defendant, VENNOS, for which RAULERSON HOSPITAL is liable, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent progression of her condition resulting in permanent impairment and a significantly

diminished life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

**COUNT VI**
**CLAIM AGAINST DEFENDANT, OKEECHOBEE HOSPITAL, INC.**
**d/b/a RAULERSON HOSPITAL**
**VICARIOUS LIABILITY BASED ON APPARENT AGENCY FOR THE NEGLIGENCE OF**
**ALEXANDER VENNOS, M.D.**

The Plaintiff adopts and realleges paragraphs 1 through 47, and paragraph 60.

72.     Additionally, or alternatively, at all relevant times, Defendant, DR. VENNOS, was the apparent agent or employee of Defendant, RAULERSON HOSPITAL, which is responsible for any negligence of this Defendant health care provider, even if Defendant, RAULERSON HOSPITAL, has no actual control or right of control.

73.     Defendant, RAULERSON HOSPITAL, is responsible for the negligence of this Defendant health care provider as its apparent agent or employee because this Defendant health care provider was acting within the scope of his apparent authority at the time he provided medical care and services to GLADYS CASTILLO when she presented and was subsequently admitted to Defendant, RAULERSON HOSPITAL.

74.     Defendant, RAULERSON HOSPITAL, by its words or conduct, caused or allowed GLADYS CASTILLO and her family to believe that Defendant, DR. VENNOS, was a health care provider provided by RAULERSON HOSPITAL and had authority to act on behalf of RAULERSON HOSPITAL with respect to the provision of care to GLADYS CASTILLO.

75.     GLADYS CASTILLO and her family justifiably relied upon the belief that in dealing with Defendant, DR. VENNOS, that he was an agent of Defendant, RAULERSON HOSPITAL, which would remain responsible for any negligence of Defendant, DR. VENNOS, and

which occurred while this Defendant health care provider was acting within the scope of his apparent authority to provide medical care and services on behalf of Defendant, RAULERSON HOSPITAL.  Further, Defendant, RAULERSON HOSPITAL, did not advise either GLADYS CASTILLO or her family that it would not be responsible for the medical care and services that were provided to GLADYS CASTILLO.

76.     As a direct and proximate result of the negligence of Defendant, VENNOS, for which RAULERSON HOSPITAL is liable, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent progression of her condition resulting in permanent impairment and a significantly diminished life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

### COUNT VII
### CLAIM AGAINST DEFENDANT, OKEECHOBEE HOSPITAL, INC. d/b/a RAULERSON HOSPITAL
### NON-DELEGABLE DUTY

The Plaintiff adopts and realleges paragraphs 1 through 47 and paragraph 60.

77.     At all relevant times, Defendant, RAULERSON HOSPITAL, undertook a duty to provide health care providers, specifically DR. VENNOS, to treat GLADYS CASTILLO upon her presentation to RAULERSON HOSPITAL for radiological services.

78.     As such, Defendant, DR. VENNOS, is deemed to be the agent, servant, or employee of Defendant, RAULERSON HOSPITAL, on account of Defendant, RAULERSON HOSPITAL's, undertaken duty to provide such health care providers to treat GLADYS CASTILLO upon her presentation for radiological services.

79.     Because Defendant, RAULERSON HOSPITAL, undertook to provide that duty,

that duty was non-delegable.

80.     In addition, as a full service, acute care hospital, Defendant, RAULERSON HOSPITAL, had and undertook the legal duty pursuant to Fla. Stat. § 395.002, § 395.1055, and Fla. Adm. Code Reg. 59A-3.2085, to provide the needed medical care and treatment to the patient population, including GLADYS CASTILLO, that would be admitted or treated at Defendant, RAULERSON HOSPITAL.  This included the provision of health care providers such as Defendants, DR. VENNOS, to provide the appropriate standard of care and treatment to patients being admitted to or treated at Defendant, RAULERSON HOSPITAL.

81.     Further, Defendant, RAULERSON HOSPITAL's, duties included the duty not only to provide these health care providers, but also to provide appropriate policies and procedures which would ensure appropriate evaluation, diagnosis, treatment, and performance of medical care and services for GLADYS CASTILLO.

82.     In addition, there were no written provisions in any forms pertaining to admission or consent to services which advised GLADYS CASTILLO or her family that the delegation of Defendant, RAULERSON HOSPITAL's, duty to provide appropriate medical care and services also operated to discharge the hospital from liability to the patient for any negligence in such provision.  The delegation of the duty, therefore, does not relieve Defendant, RAULERSON HOSPITAL, of liability.

83.     Alternatively, or in addition, any written documentation indicating that Defendant, RAULERSON HOSPITAL, reserved the right to delegate services indicates a recognition on Defendant, RAULERSON HOSPITAL's, part that it had undertaken the duty to provide these services and that duty can be delegated, but not the responsibility for the negligence committed by the health care providers to whom the duty was delegated.

84.     Any acknowledgment on the part of GLADYS CASTILLO or her family to such

delegation does not discharge the hospital from responsibility.  Consequently, if there were a written agreement or consent forms prior, upon or after admission, this would constitute an express contractual non-delegable duty.  Defendant, RAULERSON HOSPITAL, also owes a non-delegable duty under the common law based on the Undertaker's Doctrine.

85.     All of these bases for a non-delegable duty are cumulative and any one of them or all of them imposes the non-delegable duty of responsibility upon Defendant, RAULERSON HOSPITAL, for the negligent provision of care by Defendant, VENNOS.

86.     Defendant, RAULERSON HOSPITAL, also undertook to provide and arrange for studies and tests as needed by its patients, including GLADYS CASTILLO.  Defendant, RAULERSON HOSPITAL, as an entity which undertook such a duty, undertook a non-delegable duty.  It is, therefore, responsible for the negligence of Defendant, DR. VENNOS, and cannot avoid such responsibility by showing that Defendant, DR. VENNOS, was either an independent contractor, employed by another entity, or that the fault of Defendant, VENNOS, was the fault of an independent contractor.  Instead, Defendant, DR. VENNOS, will be deemed to be the agent of Defendant, RAULERSON HOSPITAL, on account of its non-delegable duty to provide such care to GLADYS CASTILLO.

87.     As a direct and proximate result of the negligence of Defendant, DR. VENNOS, in providing medical care which  RAULERSON HOSPITAL had a non-delegable duty to provide, as described herein, Defendant RAULERSON HOSPITAL is liable for the delayed diagnosis and treatment of GLADYS CASTILLO's breast carcinoma, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer, decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor

children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

**COUNT VIII**
**CLAIM AGAINST DEFENDANT, DAVID MATEO, M.D.**
**NEGLIGENCE**

The Plaintiff adopts and realleges paragraphs 1 through 47.

88.     On or about October 6, 2015, and continuing through May 10, 2016, Defendant DR. MATEO provided medical care and treatment to Ms. Castillo, as her treating physician. Specifically, Ms. Castillo sought examination and treatment by DR. MATEO on October 6, 2015 and thereafter due to her pregnancy and related complaints and conditions, including the discovery and monitoring of a palpable lump in her left breast.

89.     Defendant, DR. MATEO, was a physician who held himself out to the public in general and to Gladys Castillo in particular as a physician capable of and who undertook the corresponding duty to her of providing, supervising, and/or directing medical care and services in accordance with that level of care and skill which is recognized as acceptable and appropriate by reasonably prudent similar health care providers in the same or similar circumstances.

90.     Notwithstanding the duty undertaken, Defendant, DR. MATEO, breached that duty by failing continuously to perform a proper breast examination and identify a left breast lump and failing upon continued visits to appropriately monitor this condition and/or refer her out for further diagnostic care.

91.     As a direct and proximate result of the negligence of Defendant, DR. MATEO, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer,

decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

**COUNT IX**
**CLAIM AGAINST DEFENDANT, FLORIDA COMMUNITY HEALTH CENTERS, INC.**
**d/b/a ST. LUCIE WOMEN AND CHILDREN CENTER**
**VICARIOUS LIABILITY FOR THE NEGLIGENCE OF DAVID MATEO, M.D.**

The Plaintiff adopts and realleges paragraphs 1 through 47, and paragraph 90.

92.    Defendant, DR. MATEO, was the agent, apparent agent, servant or employee of Defendant, FCHC, which is vicariously liable for the negligence of Defendant, DR. MATEO.

93.    As a direct and proximate result of the negligence of Defendant, DR. MATEO, for which FCHC is vicariously liable, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer, decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

**COUNT X**
**CLAIM AGAINST DEFENDANT, PABLO GONZALEZ, M.D.**
**NEGLIGENCE**

The Plaintiff adopts and realleges paragraphs 1 through 47.

94.    On or about October 6, 2015, and continuing through May 10, 2016, Defendant DR. GONZALEZ provided medical care and treatment Ms. Castillo, as her treating physician. Specifically, Ms. Castillo sought examination and treatment by DR. GONZALEZ on October 6,

2015 and thereafter due to her pregnancy and related complaints and conditions, including the discovery and monitoring of a palpable lump in her left breast.

95.     At all relevant times, Defendant, DR. GONZALEZ, was the agent, apparent agent, servant, or employee of Defendant, FCHC, and was acting within the course and scope of his employment at the time he rendered treatment to GLADYS CASTILLO.

95.     Defendant, DR. GONZALEZ, was a physician who held himself out to the public in general and to Gladys Castillo in particular as a physician capable of and who undertook the corresponding duty to her of providing, supervising, and/or directing medical care and services to her in accordance with that level of care and skill which is recognized as acceptable and appropriate by reasonably prudent similar health care providers in the same or similar circumstances.

96.     Notwithstanding the duty undertaken, Defendant, DR. GONZALEZ, breached that duty by failing continuously to perform a proper breast examination and identify a left breast lump and failing upon continued visits to appropriately monitor this condition and/or refer her out for further diagnostic care.

97.      As a direct and proximate result of the negligence of Defendant, DR. GONZALEZ, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer, decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

### COUNT XI
### CLAIM AGAINST DEFENDANT, FLORIDA COMMUNITY HEALTH CENTERS, INC.

**d/b/a ST. LUCIE WOMEN AND CHILDREN CENTER**
**VICARIOUS LIABILITY FOR THE NEGLIGENCE OF PABLO GONZALEZ, M.D.**

The Plaintiff adopts and realleges paragraphs 1 through 47, and paragraph 96.

98.     Defendant, DR. GONZALEZ, was the agent, apparent agent, servant or employee of Defendant, FCHC, which is vicariously liable for the negligence of Defendant, DR. GONZALEZ.

99.     As a direct and proximate result of the negligence of Defendant, DR. GONZALEZ, for which FCHC is vicariously liable, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer, decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

**COUNT XII**
**CLAIM AGAINST DEFENDANT, CHARLYN COLEMAN, CNM, ARNP**
**NEGLIGENCE**

The Plaintiff adopts and realleges paragraphs 1 through 47.

100.     On or about October 6, 2015, and continuing through May 10, 2016, Defendant CHARLYN COLEMAN provided medical care and treatment Ms. Castillo, as her certified nurse midwife and advanced registered nurse practitioner. Specifically, Ms. Castillo sought examination and treatment by COLEMAN on October 6 and on October 28, 2015 and thereafter due to her pregnancy and related complaints and conditions, including the discovery and monitoring of a palpable lump in her left breast.

101.     Defendant, COLEMAN, was a certified nurse midwife and advanced registered nurse practitioner who held herself out to the public in general and to Gladys Castillo in

particular as a healthcare provider capable of and who undertook the corresponding duty to her of providing, supervising, and/or directing medical care and services to her in accordance with that level of care and skill which is recognized as acceptable and appropriate by reasonably prudent similar health care providers in the same or similar circumstances.

102.    Notwithstanding the duty undertaken, Defendant, COLEMAN, breached that duty by failing continuously to perform a proper breast examination and identify a left breast lump and failing upon continued visits to appropriately monitor this condition and/or refer her out for further diagnostic care.

103.    As a direct and proximate result of the negligence of Defendant, COLEMAN, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer, decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

## COUNT XIII
## CLAIM AGAINST DEFENDANT, FLORIDA COMMUNITY HEALTH CENTERS, INC. d/b/a ST. LUCIE WOMEN AND CHILDREN CENTER VICARIOUS LIABILITY FOR THE NEGLIGENCE OF CHARLYN COLEMAN, CNM, ARNP

The Plaintiff adopts and realleges paragraphs 1 through 47 and paragraph 102.

104.    Defendant, COLEMAN, was the agent, apparent agent, servant or employee of Defendant, FCHC, which is vicariously liable for the negligence of Defendant, COLEMAN.

105.    As a direct and proximate result of the negligence of Defendant, COLEMAN, in failing continuously to perform a proper breast examination and identify a left breast lump and failing upon continued visits to appropriately monitor this condition and/or refer her out for

further diagnostic care to perform an adequate breast examination, for which FCHC is vicariously liable, diagnosis and treatment of GLADYS CASTILLO's breast carcinoma was significantly delayed, causing GLADYS CASTILLO to suffer significant and permanent aggravation and progression of her pre-existing condition which resulted in permanent impairment, increased risk of cancer, decreased chance of survival, and a significantly reduced life expectancy.

WHEREFORE, Plaintiff, GLADYS CASTILLO, individually and on behalf of her minor children, KEVIN MORALES and VANNIA MORALES, demands judgment against this Defendant for the damages itemized below.

## CLAIMS FOR DAMAGES COMMON TO ALL COUNTS
## CLAIM OF GLADYS CASTILLO FOR DAMAGES

106.   Plaintiff, GLADYS CASTILLO, as a direct and proximate result of the negligence of the Defendants, has in the past and will in the future continue to suffer the following damages:

a.   Bodily injury;
b.   Pain and suffering;
c.   Disability;
d.   Disfigurement;
e.   Loss of capacity for the enjoyment of life;
f.   Aggravation of pre-existing conditions;
g.   Medical and hospital care and expenses;
h.   Loss of earnings;
i.   Loss of earning capacity in the future;
j.   Rehabilitation expenses;
k.   Mental distress and anxiety;
l.   Diminished life expectancy.

## CLAIM OF GLADYS CASTILLO FOR DAMAGES ON BEHALF OF
## KEVIN MORALES, HER MINOR CHILD

116.   As a direct and proximate result of the negligence of the Defendants that caused significant, permanent injury, including the aggravation of pre-existing conditions, resulting in permanent total disability to GLADYS CASTILLO, Plaintiff, GLADYS CASTILLO, on behalf of her minor child, KEVIN MORALES, has in the past and will in the future continue to suffer the

following damages:

    a.    Loss of his mother's services, comfort, companionship and society in the past and in the future.

### CLAIM OF GLADYS CASTILLO FOR DAMAGES ON BEHALF OF VANNIA MORALES, HER MINOR CHILD

117.    As a direct and proximate result of the negligence of the Defendants that caused significant, permanent injury, including the aggravation of pre-existing conditions, resulting in permanent total disability to GLADYS CASTILLO, Plaintiff, GLADYS CASTILLO, on behalf of her minor child, VANNIA MORALES, has in the past and will in the future continue to suffer the following damages:

    a.    Loss of her mother's services, comfort, companionship and society in the past and in the future.

WHEREFORE, the Plaintiff demands judgment against the Defendants, JAMES BRADFIELD, M.D.; RAULERSON GYN, LLC; OKEECHOBEE HOSPITAL, INC. d/b/a RAULERSON HOSPITAL; ALEXANDER VENNOS, M.D.; FLORIDA UNITED RADIOLOGY, L.C.; DAVID MATEO, M.D.; PABLO GONZALEZ, M.D., CHARLYN COLEMAN, CNM, ARNP, and FLORIDA COMMUNITY HEALTH CENTERS, INC., d/b/a ST. LUCIE WOMEN AND CHILDREN CENTER for compensatory damages in an amount in excess of the jurisdictional limits of this Court, exclusive of interest and costs, and for any other relief this Court deems just and proper.

### DEMAND FOR JURY TRIAL

The Plaintiff demands trial by jury on all issues triable as of right by a jury.

DATED this 6th day of July 2018.

*(Signature on following page)*

**LAW OFFICES OF DIANA SANTA MARIA, P.A.**
5220 S. University Drive, Suite 205-C
Ft. Lauderdale, Florida 33328
Telephone: (954) 434-1077
Facsimile:  (954) 434-4462
*Attorneys for Plaintiff*

*/s/ Diana Santa Maria*
Diana Santa Maria
Florida Bar No. 473340
Carolyn B. Anderson, Esq.
Florida Bar No. 11770
Laura D. Dolin, Esq.
Florida Bar No.: 867586
diana@santamarialaw.net
carolyn@santamarialaw.net
laura@santamarialaw.net
pleadings@santamarialaw.net


*-and-*


**PETRUCCELLI LAW**
5100 N. Federal Highway, #300B
Fort Lauderdale, FL 33308
Telephone:  (954)771-4118
Facsimile:  (954)771-4119
*Co-Counsel for Plaintiff*
Michael A. Pettruccelli, Esq.
Florida Bar No.: 717312
Kathleen O. King, Esq.
Florida Bar No.: 086060
mpetruccelli@equaljustice.law
kking@equaljustice.law
kdesanti@equaljustice.law
abuchanan@equaljustic.law

**SERVICE LIST**
**Gladys Castillo v. James Bradfield, M.D., et al**
**Case No.: 47 2018 CA 000063[a]**

Diana Santa Maria, Esq.
Florida Bar No.: 473340
diana@santamarialaw.net
Laura D. Dolin, Esq.
Florida Bar No.: 867586
laura@santamarialaw.net
Law Offices of Diana Santa Maria, P.A.
University Place, Suite 205C
5220 S. University Drive
Fort Lauderdale, FL 33328
Telephone:  (954)434-1077
Facsimile:   (954)434-4462
*Attorneys for Plaintiffs*

Michael A. Petruccelli, Esq.
Florida Bar No.: 717312
mpetruccelli@equaljustice.law
Kathleen O. King, Esq.
Florida Bar No.: 086060
kking@equaljustice.law
PETRUCCELLI LAW
5100 N. Federal Highway, #300B
Fort Lauderdale, FL 33308
Telephone:  (954)771-4118
Facsimile:   (954)771-4119
abuchanan@equaljustice.law
kdesanti@equaljustice.law
*Co-Counsel for Plaintiffs*

arhys@wickersmith.com
Adam W. Rhys, III, Esq.
***Counsel for Dr. Bradfield and Raulerson Gyn, LLC***
Wicker, Smith, O'Hara, McCoy & Ford, P.A. (WPB)
515 North Flagler Drive, Suite 1600
West Palm Beach, FL 33401
Phone: (561)689-3800
Fax: (561)689-9206
E-service: WPBcrtPleadings@wickersmith.com

Marlen.Rodriguez@usdoj.gov
Marlene Rodriguez
Assistant U.S. Attorney
U.S. Attorney's Office
99 NE 4th Street
Miami, FL 33132-2131
Telephone: (305)961-9206
Fax:  (305)530-4676
***Counsel for Florida Community Health Centers, David Mateo, MD & Pablo Gonzalez, M.D.***

Heather.hill@hhs.gov
Heather E. Hill, Paralegal Specialist
U.S. Department of Health and
Human Services
Office of the General Counsel
General Law Division and Employment
Law Branch
Washington, DC 20201
Phone:  (202)619-2155

*(Service List continued on following page)*

AAR@Bclmr.com
Andrew A. Rief, Esq.
**Counsel for Okeechobee Hospital d/b/a Raulerson Hospital**
Billing, Cochran, Lyles, Mauro & Ramsey, PA – WPB
1601 Forum Place, Suite 400
West Palm Beach, FL 33401
Phone:(561)659-5970
Fax:     (561)659-6173

jchimpoulis@chl-law.com
bpearse@chl-law.com
Jay P. Chimpoulis, Esq.
**Counsel for Alexander Vennos, M.D. &**
**Florida United Radiology, LLC**
Chimpoulis, Hunter & Lynn, PA
150 South Pine Island Road, Suite 150
Plantation, FL 33324
Phone:  (954)463-0033
Fax: (954)463-6952